# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CLOVIS JOHNSON,                           :
    Petitioner,                          :
                                         :        CIVIL ACTION NO.
    v.                                   :        3:08cv1377 (SRU)
                                         :
WARDEN, OSBORN C.I., AND                  :
UNITED STATES IMMIGRATION                 :
AND NATURALIZATION SERVICE,               :
    Respondents.                         :

## MEMORANDUM OF DECISION

Clovis Johnson has filed three petitions seeking habeas relief and a review of the final removal order issued against him by the Immigration and Naturalization Service ("INS").  In response to my order to show cause, the federal respondent, the Department of Homeland Security ("DHS"), challenged this court's jurisdiction to grant the petitions.  Although I conclude that the court may have jurisdiction to provide part of the requested relief, I nonetheless dismiss the current claim for lack of ripeness.  Moreover, I dismiss the petition for review of Johnson's final removal order because the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 (2005), mandates that such a petition be heard in the courts of appeals.

## I.    Background

Johnson is a citizen and native of Jamaica who entered the United States illegally in 1984. He was convicted of first degree manslaughter, possession of a firearm, and alteration of a firearm identification mark in 1992.  He was sentenced to twenty-seven years in prison and is currently being held in the Osborn Correctional Institution in Connecticut.  In 1995 an

immigration judge ordered his deportation to Jamaica.  Because the petitioner was in jail at the time of that decision, the INS issued an immigration detainer, requesting, *inter alia*, that the warden notify the INS of the time of Johnson's release.  The detainer provides that it "is for notification purposes only and does not limit your discretion in any decision affecting the offender's classification, work and quarters assignments or other treatment he would otherwise receive."

Johnson has recently filed three petitions *pro se* regarding his deportation order and parole status.  The precise claims of the petitioner are not easy to discern from the filings.  The first, filed September 8, 2008, is entitled "Motion for Authoritative Intervention."  In it he asks the district court "to grant the petitioner his classification program and halfway house."  Apparently, the immigration detainer has made Johnson ineligible for a halfway house program, and Johnson is asking the court to order the Department of Correction to place him in the program nonetheless.  In response to my order to show cause, DHS argued that this court does not have jurisdiction to issue such an order because Johnson is currently incarcerated by the State of Connecticut and "DHS exercises no day to day control."  DHS argued further that the detainer itself does not transfer Johnson to DHS custody but is merely "'a notice that future [immigration] custody will be sought at the conclusion of a prisoner's pending confinement by another jurisdiction, and . . . a request for prior notice regarding the termination of that confinement.'" Response at 4 (quoting *Roldan v. Racette*, 984 F.2d 85, 88 (2d Cir. 1993)) (alterations in original).

On December 10, 2008, the Board of Parole gave Johnson a voted-to-parole date of November 21, 2009.  His conditions include parole to his immigration detainer and electronic

monitoring.  On February 28, 2009, the petitioner filed an "Amended Petition for a Writ of Mandamus."  He argued that the parole decision had granted him "a constitutionally protected liberty interest," and that he "fear[s] that DHS will deny him his constitually [sic] protected Liberty [sic] interest; once [he] is in their day to day custody . . . ."  He asks the court "to honor the Plaintiff Right [sic] to his Parole Mandate." Though ambiguous, the petitioner seems to be concerned either:  (1) that upon being released on parole the DHS will promptly deport him, thereby interfering with his alleged right to enjoy his parole term in Bridgeport, or (2) that he will continue to be imprisoned by Connecticut even after his voted-to-parole date as a result of his immigration detainer.  DHS responded to the amended petition by noting that the petitioner was still in state custody, and that Bureau of Immigrations and Customs Enforcement ("BICE") would not make a determination whether to take the petitioner into its custody until his release date. As a result, DHS argued that this court "lacks jurisdiction over DHS regarding [Johnson's] challenge to his current detention," and that "the release determinations made by the State of Connecticut do not confer habeas jurisdiction . . . ."  Response to Amended Petition at 3.

Johnson most recently filed, on April 9, 2009, a "Petitioner Response to Respondent Response to Petitioner Amended Petition."  He claims that he was "misled by the government" and "could not have knowingly and intelligently waived his right to appeal."  He seems to want to compel the Board of Immigration Appeals ("BIA") to hear an otherwise untimely appeal because of the initial immigration judge's failure to notify him of his right to appeal.  On May 11, 2007, the First Circuit, which apparently he had previously petitioned for review, dismissed his immigration appeal because he "had not exhausted administrative remedies."

II.     **Discussion**

There are three interrelated issues raised by this series of petitions.  The first is to determine with some specificity the relief Johnson seeks.  The second is whether this court has jurisdiction to consider Johnson's claims.  The third issue is the actual merits of his petitions. The resolution of the first issue will affect the second and third.

Generally, a court will construe the papers of a *pro se* litigant liberally.  *Marmolejo v. United States*, 196 F.3d 377 (2d Cir. 1999).  I believe there are two constructions of Johnson's petitions that yield plausible claims.  First, Johnson might be seeking review of the decision by the immigration judge that resulted in his deportation order.  He claims he was "misled" into waiving his right to appeal to the BIA.  Second, he might seek, consistent with *Gillies v. Strange*, 2005 WL 3307349 (D. Conn. Dec. 2005), to compel BICE to deport him to Jamaica after his voted-to-parole date.  Other constructions would be entirely meritless.[1]

Johnson's first plausible claim is a petition for review of his removal order.  Although under normal circumstances the BIA cannot hear late-filed appeals, there is some authority in the case law that the BIA may have jurisdiction to consider an untimely appeal where the delay was the result of "official misleading."  *See Zhong Guang Sun v. U.S. Dep't of Justice,* 421 F.3d 105, 109-10 (2d Cir. 2005).  However, this court lacks jurisdiction to entertain that part of Johnson's

---

[1] Johnson's apparent desire to compel the correctional facility to enter him into a halfway house program, and to restrain BICE from deporting him once his parole date passes, are both unavailing.  In the former case, Johnson has no clear right to the relief sought and the alleged "duty" on the part of the respondent is largely discretionary, making mandamus relief inappropriate, *cf. Billiteri v. U.S. Bd. of Parole* 541 F.2d 938, 946 (2d Cir. 1976) (listing the prerequisites to the issuance of a writ of mandamus);  in the latter case, BICE has a statutory *requirement* to deport him.  *See* 8 U.S.C. § 1231(a)(2) (mandating removal where the alien is deportable due to multiple criminal convictions or aggravated felony); 8 U.S.C. § 1231(a)(4)(A) ("Parole . . . is not a reason to defer removal.");  *Zadvydas v. Davis*, 533 U.S. 678 (2001).

4

petition.  The REAL ID Act of 2005, Pub.L. No. 109-13, 119 Stat. 231 (2005), "specifically strips the district courts of their habeas corpus jurisdiction over orders of removal.  Section 106(a)(1) of the Act mandates that the courts of appeals shall be the sole and exclusive means for judicial review of an order of removal."  *Saavedra De Barreto v. I.N.S.*, 427 F. Supp. 2d 51, 54 (D. Conn. 2006).  If review of Johnson's removal order is the gravamen of the present petition, it must be dismissed without prejudice.  Johnson is free to re-file his petition challenging his final deportation order with the Court of Appeals once he has exhausted administrative remedies.

Johnson's second plausible claim would challenge his continued detention in prison after the passing of his parole date if he were still detained at that point only by virtue of the immigration detainer.  In that situation, BICE would in effect be restraining Johnson's liberty, because without the detainer he would have been released from physical imprisonment.  *See Gillies*, 2005 WL 3307349, at *6.  In *Gillies*, this court held that it had jurisdiction to entertain a petition challenging such confinement, without reaching the merits of that case.[2]  *Gillies* followed the Court of Appeals in *Simmonds v. I.N.S.*, 326 F.3d 351 (2d Cir. 2003).  A jurisdictional prerequisite to the granting of the writ of habeas corpus is that the petitioner be "in custody" of the challenged authority.  *Simmonds* held that an immigration detainer and a final removal order together were sufficient to establish "custody" over an alien under 28 U.S.C. § 2241 for habeas purposes, while explicitly reserving judgment on the question whether the detainer alone would be sufficient.  Because Johnson has been voted to parole and is subject to a final removal order, under *Gillies* and *Simmonds* this court has jurisdiction to hear Johnson's

---

[2] The REAL ID Act of 2005 would not affect jurisdiction over such a claim, because that legislation applies only to judicial review of an order of removal. REAL ID Act of 2005, Pub.L. No. 109-13, § 106(a)(1), 119 Stat. 231 (2005).

habeas petition.  *Gillies*, 2005 WL 3307349, at *6 (". . . Gillies is subject to a final order of removal.  That fact is sufficient to establish that Gillies is in BICE custody for purposes of habeas jurisdiction.")

However, Johnson's voted-to-parole date is not until November 21, 2009.  "The law is clear that while [an alien] is still serving his state sentence, the Attorney General is under no obligation to execute a deportation order."  *Duamutef v. I.N.S.,* 386 F.3d 172, 179 (2d Cir. 2004).  The narrow relief the plaintiff seeks here is an order compelling deportation to Jamaica or recognizing the beginning of the six-month waiting period that the Supreme Court in *Zadvydas* recognized as the presumptive limit on how long immigration authorities could detain an alien after the statutory removal period,[3] but that relief would not be available for several months yet.  I therefore dismiss this petition without prejudice on the grounds that it is not prudentially ripe.

The Supreme Court has written: "Without undertaking to survey the intricacies of the ripeness doctrine it is fair to say that its basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977).  The present case falls squarely within that purpose of ripeness doctrine.  Indeed, the Second Circuit dismissed a similar

---

[3] *Zadvydas* held that "the [removal] statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal . . . ." 533 U.S. at 689. A reasonable length for that period is presumptively six months, after which the alien may be entitled to release. *Id.* at 701.

petition in *Simmonds* for lack of ripeness.  There the Court distinguished between constitutional and prudential ripeness.  The former goes to whether there is a live dispute to satisfy the case and controversy requirement of Article III.  As such it is a close relative of standing doctrines.  By contrast, "'[p]rudential ripeness is . . . a tool that courts may use to enhance the accuracy of their decisions and to avoid becoming embroiled in adjudications that may later turn out to be unnecessary.'"  *New York Civil Liberties Union v. Grandeau*, 528 F.3d 122, 131 (2d Cir. 2008) (quoting *Simmonds*, 326 F.3d at 357).  Because Johnson's anticipated release on parole is conditioned on good behavior, and can be withdrawn at the discretion of the state, and because Johnson may in fact be released and deported promptly after his parole date, a decision on the merits of his petition would be conjectural and could "turn out to be unnecessary."  Accordingly, this petition is dismissed without prejudice, leaving Johnson free to challenge his continued detention after the parole date has passed.  Johnson should note, however, that this is a narrow opportunity for him: if successful, his petition may only result in his deportation back to Jamaica, or the beginning of the six-month period established in *Zadvydas* if he is kept in confinement.

## III.    Conclusion

Johnson has two colorable claims, but they should at this point both be dismissed.  The first is a habeas petition challenging his removal order, but the REAL ID Act of 2005 transferred jurisdiction over this type of claim to the courts of appeals.  The second would seek an order compelling Johnson's release on parole after his custody shifts to BICE upon the passage of his voted-to-parole date.

For the reasons stated above, Johnson's petitions (docs. #1, #6, and #8) are DISMISSED

without prejudice.  The clerk shall close the file.

It is so ordered.

Dated at Bridgeport, Connecticut, this 9th day of June 2009.


/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge